The Honorable Thomas S. Zilly

1

2

3

4

5

6

7     UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE

8

9   THOMAS R. DREILING, a shareholder of
    INFOSPACE, INC.,

10                                                   No. C03-3740Z
                        Plaintiff,

11                                                   DEFENDANT AMERICAN EXPRESS
                                                     TRAVEL RELATED SERVICES
        v.                                           COMPANY'S MOTION TO DISMISS
12                                                   THE AMENDED COMPLAINT AND
                                                     MEMORANDUM IN SUPPORT
13  AMERICAN EXPRESS TRAVEL RELATED
    SERVICES COMPANY, INC, a New York
    Corporation,
14
                                                     NOTE ON MOTION CALENDAR:
15                      Defendant,                   FEBRUARY 27, 2004

16                        And

17  InfoSpace, Inc., a Delaware corporation,

18                      Nominal Defendant.

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ...................................................................1

II.  STATEMENT OF FACTS ......................................................................3

     A.   The Parties.......................................................................3

     B.   The InfoSpace-Prio Merger.........................................................4

     C.   Plaintiff's Claim ................................................................5

III. ARGUMENT ..............................................................................6

     A.   Due To Its Many Pleading Deficiencies, the Complaint Fails To State a Claim on
          Which Relief May Be Granted......................................................6

          1.   The Amended Complaint Fails To Assert the Approximate Dates of
               TRS's Alleged Sales.........................................................7

          2.   The Amended Complaint Provides No Basis for Tolling the Statute of
               Limitations, Which Has Now Run..............................................8

          3.   The Amended Complaint Fails Adequately To Plead Insider Status.......10

          4.   The Amended Complaint Fails To Include Adequate Demand
               Allegations ...............................................................13

     B.   Rule 16b-3(D) Exempts TRS From Potential § 16(b) Liability...........................14

IV.  CONCLUSION ............................................................................19

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - i
Case No. C03-3740Z

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1

TABLE OF AUTHORITIES

2

CASES

3  Atlantic Tele-Network v. Prosser, 151 F. Supp. 2d 633 (D. V.I. 2000)........................................ 14

4  Auer v. Robbins, 519 U.S. 452 (1997)............................................................................... 17

5  Blau v. Lehman, 368 U.S. 403 (1962) ................................................................ 6, 9, 10, 11

6  Blau v. Lehman, 173 F. Supp. 590 (S.D.N.Y. 1959) ................................................ 11

7  Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945)........................................ 17

8  Branch v. Tunnell, 14 F.3d 449 (9th Cir. 1994)........................................................ 12

9  Citadel Holding Corp. v. Roven, 26 F.3d 960 (9th Cir. 1994)................................. 7, 18

10  Cruz v. Beto, 405 U.S. 319 (1972)........................................................................... 3

11  Donoghue v. Golden State Bancorp Inc., 02 Civ. 2404, 2003 U.S. Dist. LEXIS 17233
       (S.D.N.Y. Sept. 30, 2003) ........................................................................ 2, 7, 8

12
    Feasby v. Industri-Matematik Int'l Corp., 99 Civ. 8761, 2000 U.S. Dist. LEXIS 9792
13     (S.D.N.Y. July 17, 2000).......................................................................... 2, 7, 13

14  Foremost-McKesson, Inc. v. Provident Sec. Co., 423 U.S. 232 (1976) ........................ 14, 16, 17

15  Galbraith v. County of Santa Clara, 307 F.3d 119 (9th Cir. 2002) ............................ 12

16  Geraci v. Homestreet Bank, 203 F. Supp. 2d 1211, 1214 (W.D. Wash. 2002) ............................ 17

17  Grimmett v. Brown, 75 F.3d 506 (9th Cir. 1996) .................................................... 2, 10

18  Gryl v. Shire Pharms. Group, PLC, 298 F.3d 136 (2d Cir. 2002) ..................................... 14, 15, 16

19  Hinton v. Pacific Enterprises, 5 F.3d 391 (9th Cir. 1993)............................................. 9

20  In re Boeing Sec. Litig., 40 F. Supp. 2d 1160 (W.D. Wash. 1998) .............................. 3, 6, 12, 13

21  Kaplan v. California Public Employees' Ret. System, No. C 98-1246 CRB, 1998 U.S.
       Dist. LEXIS 14040 (N.D. Cal. Sept. 3, 1998).................................................... 12

22
    Kennedy v. Nicastro, 503 F. Supp. 1116 (N.D. Ill. 1980) .................................................. 8, 13, 14
23
    Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz al Saud, 903 F. Supp. 452
24     (S.D.N.Y. 1994) ....................................................................................... 13

25  Levy v. Sterling Holding Co., LLC, 314 F.3d 106 (3d Cir. 2002)............................. 15, 16, 17, 18

26  Marquette Cement Mfg. Co. v. Andreas, 239 F. Supp. 962 (S.D.N.Y. 1965) .............................. 11

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1  Rutledge v. Boston Woven Hose & Rubber Co., 576 F.2d 248 (9th Cir. 1978)........................... 10

2  Sheffield v. Orius Corp., 211 F.R.D. 411 (D. Or. 2002)................................................ 7

3  Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121
   (W.D. Wash. 2000) ....................................................................... 11, 16

4
   Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001)................................ 2, 6, 12, 13
5
   Stirling v. Chemical Bank, 382 F. Supp. 1146 (S.D.N.Y. 1974) .................................... 9
6
   United States v. Real Property Located at 9832 Richeon Ave., 234 F. Supp. 2d 1136,
7      1137 (C.D. Cal. 2002) ..................................................................... 6

8  Whittaker v. Whittaker Corporation, 639 F.2d 516 (9th Cir. 1981) ......................................... 9, 10

9

10                                          STATUTES

11 15 U.S.C. § 78p(a).......................................................................... 5, 6, 9, 11

12 15 U.S.C. § 78p(b) ......................................................................... 1, 2, 3, 7, 11, 14

13 15 U.S.C. § 78w(a)(1) ...................................................................... 18

14 Federal Rule of Civil Procedure 8(a) ........................................................ 1, 6, 7

15 Federal Rule of Civil Procedure 9(f)........................................................ 1, 7

16 Federal Rule of Civil Procedure 12(b)(6) .................................................... 1, 6

17

18                                            OTHER

19 17 C.F.R. § 240.16b-3 ...................................................................... 3, 14

20 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure (2d ed. 1990)........... 6, 7

21 Exchange Act Release No. 34-28869, 1991 SEC LEXIS 171 (Feb. 8, 1991) .............................. 10

22 Exchange Act Release No. 34-37260, 61 Fed. Reg. 30376 (June 14, 1996) ......................... 15, 16

23

24

25

26

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - iii
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

Defendant American Express Travel Related Services Company, Inc. respectfully moves to dismiss the Amended Complaint in this action pursuant to Federal Rules of Civil Procedure 8(a), 9(f) and 12(b)(6), and submits this memorandum of law in support of its motion.

## I. PRELIMINARY STATEMENT

In this shareholder derivative action, Thomas Dreiling, a purported shareholder of InfoSpace, Inc. ("InfoSpace"), asserts that American Express Travel Related Services Company, Inc. ("TRS") violated Section 16(b) of the Securities Exchange Act of 1934, as amended ("§ 16(b)"), 15 U.S.C. § 78p(b), by realizing a short-swing profit in connection with the sale of InfoSpace stock TRS had acquired as a result of the February 25, 2000 merger of InfoSpace and a company in which TRS had invested, Prio, Inc. ("Prio").

The Amended Complaint fails to state a claim on which relief may be granted for five separate reasons. First, Mr. Dreiling fails to allege the approximate date (or dates) on which TRS sold its InfoSpace shares, the most basic piece of information underlying a § 16(b) claim. Because § 16(b) does not impose liability unless the defendant is a corporate insider who purchased and sold corporation securities within a period of six months – and bars suit altogether if not brought within two years of an alleged short-swing profit made thereon, see 15 U.S.C. § 78p(b)[1] – this information must be affirmatively pled in any § 16(b) case to

---

[1] Section 16(b) states: "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and

DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT - 1
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1  demonstrate compliance with the statute. <u>See, e.g.</u>, <u>Donoghue v. Golden State Bancorp Inc.</u>,

2  02 Civ. 2404 (TPG), 2003 U.S. Dist. LEXIS 17233, at *3 (S.D.N.Y. Sept. 30, 2003). Without

3  the benefit of *any* factual allegation regarding TRS's stock disposition, Mr. Dreiling fails to

4  satisfy his burdens of demonstrating entitlement to relief and providing TRS notice of the claim

5  against it and the grounds upon which the claim is based.

6      Second, despite the lack of allegations in the Amended Complaint, other materials in the

7  record demonstrate that Mr. Dreiling has waited more than the permitted two years to file suit.

8  Moreover, he has failed to allege any facts that would support equitable tolling of the statute of

9  limitations. Accordingly, Mr. Dreiling has burdened TRS and the Court with an untimely action

10  and waived any possible defense to its dismissal. <u>See, e.g.</u>, <u>Grimmett v. Brown</u>, 75 F.3d 506,

11  514-15 (9th Cir. 1996).

12      Third, Mr. Dreiling has failed adequately to allege that TRS ever *was* an InfoSpace

13  insider subject to the proscriptions of § 16(b). All the information in Mr. Dreiling's possession

14  and in the public record demonstrate that TRS – an approximately 1% shareholder of

15  InfoSpace – was *not* a director, officer or 10% shareholder of InfoSpace.   Nonetheless,

16  Mr. Dreiling has alleged that TRS "deputized" an InfoSpace director to represent its interests

17  and, thereby, became an InfoSpace insider itself. The Court need not – and should not – credit

18  this conclusory allegation that contradicts matters properly subject to judicial notice. <u>See, e.g.</u>,

19  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

20      Fourth, since Mr. Dreiling is seeking recovery on behalf of InfoSpace rather than

21  himself, he must demonstrate that he petitioned InfoSpace to pursue its alleged rights against

22  TRS, but that InfoSpace refused to do so within 60 days.   <u>See, e.g.</u>, <u>Feasby v. Industri-</u>

23  <u>Matematik Int'l Corp.</u>, 99 Civ. 8761 (HB), 2000 U.S. Dist. LEXIS 9792, at *20 (S.D.N.Y.

24

25  purchase, of the security or security-based swap agreement (as defined in section 206B of the
   Gramm-Leach-Bliley Act) involved, or any transaction or transactions which the Commission
26  by rules and regulations may exempt as not comprehended within the purpose of this
   subsection." 15 U.S.C. § 78p(b) (2003).

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 2
Case No. C03-3740Z

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1   July 17, 2000).   Indeed, this is a statutory precondition to filing suit.   See 15 U.S.C.

2   § 78p(b) ("Suit . . . may be instituted . . . by the owner of any security of the issuer . . . if the

3   issuer shall fail or refuse to bring such suit within sixty days after request.").   Mr. Dreiling,

4   however, has never requested InfoSpace to seek relief from TRS.

5          Fifth, even if the Court were to overlook every one of the Amended Complaint's many

6   pleading and procedural defects, dismissal still would be warranted for the fundamental reason

7   that the Securities and Exchange Commission ("SEC") – the agency appointed by Congress to

8   regulate § 16(b) – has explicitly exempted from § 16(b) liability TRS's acquisition and later sale

9   of InfoSpace stock.   In 1996, the SEC enacted Rule 16b-3(d), which provides that "[a]ny

10  transaction involving a grant, award or *other acquisition* [of issuer equity securities] from the

11  issuer" shall be exempt from § 16(b) liability if the transaction is "approved by the board of

12  directors of the issuer." 17 C.F.R. § 240.16b-3(d)(1) (2003) (emphases added).   In light of this

13  clear prohibition on his suit, it is shocking to find Mr. Dreiling challenging TRS's sale of stock

14  acquired directly from InfoSpace in a board-approved merger.

## II. STATEMENT OF FACTS[2]

16  A.     The Parties

17         Plaintiff Thomas Dreiling is an InfoSpace shareholder allegedly residing in the Western

18  District of Washington.   (Amended Complaint ("Compl.") ¶ 1.)   Mr. Dreiling purports to bring

19  this action derivatively on behalf of InfoSpace. (Compl. ¶¶ 2, 6, 16.)

20         Nominal Defendant InfoSpace is a Delaware corporation that provides internet software

21  and application services.  (See InfoSpace Form 10-K dated March 27, 2003, Mellem Decl.[3]

22

23  [2]   The following summary is based on the allegations in the Amended Complaint and the
    documents attached thereto, the factual averments of which are assumed to be true for the
24  purposes of this motion only. See Cruz v. Beto, 405 U.S. 319, 322 (1972).   Additional facts
    have been drawn from InfoSpace's and TRS's public filings, which may be considered on a
25  motion to dismiss. See In re Boeing Sec. Litig., 40 F. Supp. 2d 1160, 1165 (W.D. Wash. 1998).
    [3]   References to documents included in the record as exhibits to the declaration of Roger D.
26  Mellem dated February 5, 2004, are noted herein as "Mellem Decl. Ex. __."

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 3
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ◆ 206-447-4400

50418449.03

1    Ex. A, at 3.)  InfoSpace transferred common stock to TRS in the InfoSpace-Prio merger and is

2    the "issuer" in this action.  (Compl. ¶ 2; Pl's. Ex. A, at 2.)

3    Defendant TRS is a New York corporation that provides a variety of products and

4    services, including credit cards, other consumer and corporate lending and banking products and

5    tax preparation and business planning services.  (Compl. ¶ 3; Ex. (a)(1) to AMTRS Corp.'s

6    Form TO-T, dated Feb. 27, 2001 ("Form TO"), Mellem Dec. Ex. B., at 18.)  All of TRS's equity

7    is owned by American Express Company ("American Express").  (See Form TO, Mellem Decl.

8    Ex. B, at 18.)  However, the two corporations are legally distinct.  (See id.)

9    From January 21, 2000, until May 21, 2001, an individual named David House was a

10   member of the InfoSpace board of directors.  (Compl. ¶ 8; InfoSpace Schedule 14A, dated

11   April 25, 2000 ("2000 Proxy"), Mellem Decl. Ex. C, at 5.; InfoSpace Schedule 14A, dated

12   April 16, 2001, Mellem Decl. Ex. D, at 5.)  During that time Mr. House was a corporate officer

13   of one of TRS's operating divisions.  (Compl. ¶ 8; 2000 Proxy, Mellem Decl. Ex. C, at 5.)  Prior

14   to joining the InfoSpace board of directors, Mr. House served as a director of Prio.  (2000

15   Proxy, Mellem Decl. Ex. C, at 5.)

16   B.    The InfoSpace-Prio Merger

17   In 2000, TRS or its parent American Express owned 2,702,772 shares of Prio preferred

18   stock.  (Pl.'s Ex. A, at 2.)  On February 25, 2000, InfoSpace acquired all of Prio's then-

19   outstanding equity, including the shares held by TRS.  (Id.)  The consideration received by

20   Prio's shareholders was 5,370,000 shares of InfoSpace common stock.  (InfoSpace Form 8-K,

21   dated Feb. 25, 2000 ("8-K"), Mellem Dec. Ex. E, at 2.)  Pursuant to publicly-disclosed

22   conversion ratios approved by the InfoSpace board of directors, TRS received but a fraction of

23   that amount.  (Id., ex. 2.1, at 1, 9.)  At the time of the InfoSpace-Prio merger, there were

24   113,899,165 shares of InfoSpace common stock outstanding.  (2000 Proxy, Mellem Decl.

25   Ex. C, at 2.)

26

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 4
Case No. C03-3740Z

50418449.03

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

C.     Plaintiff's Claim

On September 17, 2003, Mr. Dreiling sent a letter to the InfoSpace board of directors alleging that "American Express Company" acquired InfoSpace common stock in the InfoSpace-Prio merger and subsequently "sold substantial amounts of InfoSpace stock from February 25, 2000 through August 24, 2000[.]" (Pl.'s Ex. A, at 1-2.)  It further alleged that American Express was "represent[ed] on the InfoSpace board of directors through its deputy, David C. House."  (Id., at 2.)[4]  The letter then asserted that American Express had violated § 16(b) and requested that the InfoSpace board of directors let him know "whether InfoSpace intends to pursue American Express Company for the recovery of § 16(b) profits." (Id., at 2.)

Writing on behalf of InfoSpace's board of directors, InfoSpace's outside counsel informed Mr. Dreiling that it would not pursue such a suit.  (Compl. ¶ 8.)  Counsel explained that "the facts show that [Mr. House] did not in any way represent AmEx on the Board of Directors of the Company.  Accordingly, AmEx was not a director by deputization and was not subject to Section 16 of the Exchange Act." (Demand Response Letter, Mellem Decl. Ex. F.)

On November 26, 2003, Mr. Dreiling filed a § 16(b) complaint in this Court seeking the disgorgement of short-swing InfoSpace profits from American Express.  That complaint was never served.  On December 15, 2003, he filed the Amended Complaint, removing American Express from the caption and substituting TRS as defendant.[5]

The Amended Complaint baldly asserts that "Within periods of less than six months, [TRS] engaged in a purchase and corresponding sales, and/or sales and a corresponding purchase, of InfoSpace stock." (Compl. ¶ 10.)  It further alleges that TRS "failed to report the transactions subject to this action as required under § 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a), thereby tolling the two-year statute of limitations." (Compl. ¶ 11.)

---

[4] The letter did not explain why Mr. Dreiling believes Mr. House to have been a "deputy."

[5] Mr. Dreiling has not alleged – nor could he – that he served a revised demand letter upon the InfoSpace board of directors requesting that they consider taking action against TRS.

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 5
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1   Finally, it claims that TRS "was, from January 21, 2000 through May 21, 2001, a 'director' for

2   purposes of § 16(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a).  [TRS]

3   deputized David C. House to represent its interests on InfoSpace's board of directors.   For

4   purposes of liability under § 16(b), [TRS] was an InfoSpace director and statutory insider at all

5   relevant times."  (Compl. ¶ 13.)   From these meager building blocks, Mr. Dreiling concludes

6   that TRS "has violated § 16(b) of the Securities Exchange Act of 1934[.]"  (Compl. ¶ 15.)  It is

7   these allegations that the Court must now evaluate.

8                                 **III. ARGUMENT**

9   **A.     Due To Its Many Pleading Deficiencies, the Complaint Fails To State a Claim on**
            **Which Relief May Be Granted.**
10
         A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6)
11
    should be granted where, accepting the facts alleged in the complaint as true, it appears beyond
12
    doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to
13
    relief.  See In re Boeing, 40 F. Supp. 2d at 1165.  Rule 12(b)(6) must be read in conjunction
14
    with Rule 8(a), which requires a "short and plain statement of the claim showing that the
15
    pleader is entitled to relief."  See United States v. Real Property Located at 9832 Richeon Ave.,
16
    234 F. Supp. 2d 1136, 1137 (C.D. Cal. 2002) (citing 5A Charles A. Wright & Arthur R. Miller,
17
    Federal Practice and Procedure § 1356 (1990)).  Dismissal is required where "a plaintiff's
18
    complaint lacks a cognizable legal theory or sufficient facts [to] support a cognizable legal
19
    theory."  In re Boeing, 40 F. Supp. 2d at 1165 (internal quotes omitted).  Unsupported factual
20
    conclusions will not defeat a motion to dismiss where the allegations are purely conclusory or
21
    contradict matters properly subject to judicial notice.  See Sprewell, 266 F.3d at 988.
22
         Since "[t]he language of § 16 does not purport to impose its extraordinary liability on
23
    any 'person,' 'fiduciary' or not, unless he or it is a 'director,' 'officer' or 'beneficial owner of
24
    more than 10 per centum of any class of [an issuer's] equity security," Blau v. Lehman,
25
    368 U.S. 403, 454 (1962), every § 16(b) complaint must contain adequate allegations of
26

DEFENDANT'S MOTION TO DISMISS THE AMENDED              **FOSTER PEPPER & SHEFELMAN PLLC**
COMPLAINT AND MEMORANDUM IN SUPPORT - 6                   1111 THIRD AVENUE, SUITE 3400
Case No. C03-3740Z                                  SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

"insider" status. To withstand a motion to dismiss, a plaintiff must also show that the defendant "(1) realized a profit, (2) from a purchase and sale or sale and purchase within a period of less than six months, (3) of an equity security of [the issuer], (4) in a transaction that was not exempt by the rules and regulations of the Securities and Exchange Commission[.]" <u>Citadel Holding Corp. v. Roven</u>, 26 F.3d 960, 963-64 (9th Cir. 1994). Further, the plaintiff must demonstrate compliance with all statutory preconditions and satisfaction of Rule 8(a). <u>See</u> <u>Feasby</u>, 2000 U.S. Dist. LEXIS 9792, at *20; <u>Donoghue</u>, 2003 U.S. Dist. LEXIS 17233, at *3.

Here, Mr. Dreiling's four-page Amended Complaint is certainly short and plain as required by the first clause of Rule 8(a) but, as explained more fully below, does not come close to showing that he is entitled to relief, as required by the second. Since the Amended Complaint fails to state a claim on which relief may be granted, the Court should grant TRS's motion to dismiss.

> 1. <u>The Amended Complaint Fails To Assert the Approximate Dates of TRS's Alleged Sales.</u>

The most fundamental fact in any § 16(b) case is the date on which the alleged short-swing profit was earned. Indeed, the statute explicitly extinguishes a plaintiff's right of action if suit is not brought within two years of that alleged profit. <u>See</u> 15 U.S.C. § 78p(b). Accordingly, to demonstrate compliance with the statute and to satisfy the requirements of Rules 8(a) and 9(f),[6] a § 16(b) plaintiff is required to set forth in his pleading the approximate dates on which the alleged events occurred. <u>See, e.g.</u>, <u>Sheffield v. Orius Corp.</u>, 211 F.R.D. 411, 415 (D. Or. 2002).[7] Mr. Dreiling, however, has failed to do so. All Mr. Dreiling has alleged is that, "Within periods of less than six months, [TRS] engaged in a purchase and corresponding sales, and/or sales and a corresponding purchase, of InfoSpace stock." (Compl. ¶ 10.)

---

[6] Rule 9(f) states, "For the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of material matter."

[7] <u>See also</u> 5A Wright and Miller, <u>supra</u>, § 1309, at 698.

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 7
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

Faced with a nearly identical allegation, the United States District Court for the Southern District of New York recently ruled, "It is clear that [the claim] must be dismissed. It is entirely vague, without reference to any specific transaction." <u>Donoghue</u>, 2003 U.S. Dist. LEXIS 17233, at *3.[8] A different federal court went even further in dismissing a § 16(b) claim that purported to cover "all [possible] six month periods[,]" exclaiming that by making such an open-ended allegation the plaintiffs had "outdone themselves in the assertion of groundless claims." <u>Kennedy v. Nicastro</u>, 503 F. Supp. 1116, 1119 (N.D. Ill. 1980).

In this case, Mr. Dreiling's *ipso facto* allegation of stock disposition fails to give TRS or the Court fair notice of the grounds upon which his claim rests – or even whether it still exists. No defendant should be required to answer such an empty pleading. As in <u>Donoghue</u> and <u>Kennedy</u>, the Amended Complaint should be dismissed. <u>See Donoghue</u>, 2003 U.S. Dist. LEXIS 17233, at *3; <u>Kennedy</u>, 503 F. Supp. at 1119.

   2.   <u>The Amended Complaint Provides No Basis for Tolling the Statute of Limitations, Which Has Now Run.</u>

As mentioned above, no suit for recovery of short-swing profits may be brought more than two years after the alleged profits have been earned. Also as mentioned above, Mr. Dreiling has impermissibly failed to identify the dates on which TRS allegedly realized such profits. One possible reason for this failure is that Mr. Dreiling wishes to hide from the Court the facts that his claim has lingered for more than two years and that his cause of action – to the extent it ever existed – is now expired.

Mr. Dreiling's disappearing act will not succeed, however. Whatever its other defects, the demand letter Mr. Dreiling has chosen to attach to the Amended Complaint demonstrates that the alleged short-swing profits he wishes to recover occurred between February 25, 2000, and August 24, 2000 – significantly more than two years before he filed even his original

---

[8] The complaint in the <u>Donoghue</u> case alleged that defendants "purchased and sold or sold and purchased equity securities of [the issuer] within periods of less than six months of each other." <u>Donoghue</u>, 2003 U.S. Dist. LEXIS 17233, at *3.

DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT - 8
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

complaint on November 26, 2003. (See Pl's Ex. A, at 1.) Unless the Amended Complaint shows that the statute of limitations has been tolled, then, Mr. Dreiling's lawsuit must be dismissed. See Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff. That burden does not arise only after a motion to dismiss[.]") (Citations omitted.)

Perhaps cognizant of his burden, Mr. Dreiling alleges that TRS "failed to report the transactions subject to this action as required under § 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a),[9] thereby tolling the two-year statute of limitations." (Compl. ¶ 11.) In so doing, he attempts to invoke the "disclosure" theory of tolling announced by the Ninth Circuit in Whittaker v. Whittaker Corporation, wherein it was held that "an insider's failure to disclose covered transactions in . . . required § 16(a) reports tolls the two year limitations period for suits under § 16(b)[.]" 639 F.2d 516, 530 (9th Cir. 1981). As suggested by its very name, however, the disclosure theory is inapplicable to a situation such as the one at bar where the alleged insider was *not* required to make disclosures in § 16(a) reports.

To the extent TRS was ever an "insider" of InfoSpace (which it was not), it would only have been so by "deputization" -- that is, if it actually deputized someone to represent its interests on the InfoSpace board of directors. (Compare Compl. ¶ 13.)[10] As Mr. Dreiling should know, "directors by deputization" are not required to file § 16(a) reports. See, e.g., Stirling, 382 F. Supp. at 1152 ("the concept of 'deputization' has not been extended to the

---

[9]   Section 16(a) requires certain officers, directors and beneficial owners of more than 10 per cent of an issuer to report the amount of equity they own and to disclose recent changes in ownership. See 15 U.S.C. § 78p(a); Stirling v. Chemical Bank, 382 F. Supp. 1146, 1152 (S.D.N.Y. 1974), aff'd, 516 F.2d 1396 (2d Cir. 1975).

[10]   Section 16 is only applicable to a small class of corporate insiders consisting of "director[s,]" "officer[s,]" and "beneficial owner[s] of more than 10 per centum" of a class of a corporation's equity. 15 U.S.C. § 78p(a). TRS is not alleged to have been a literal member of this class. In Blau v. Lehman, however, the Supreme Court suggested that a defendant corporation might be considered a "director" under the statute if it "actually functioned as a director through [a representative], who had been deputized by [the defendant corporation] to perform a director's duties not for himself but for [the defendant corporation.]"   368 U.S. at 410.   Since the deputization standard is exacting, the theory has rarely been successfully invoked.

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 9
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1  reporting requirements of section 16(a)"). The SEC had the opportunity to change this rule in

2  regulations adopted in 1991, but consciously chose not to. <u>See</u> Exchange Act Release No. 34-

3  28869, 1991 SEC LEXIS 171, at *9 n.27 (Feb. 8, 1991) ("[T]he legal doctrine concerning

4  'deputized' directors is not affected by the rules adopted today and will be left to case law.").

5  Since even under Mr. Dreiling's ill-conceived deputization theory TRS would not have been

6  required to file § 16(a) reports with respect to InfoSpace, it certainly never "fail[ed] to disclose

7  covered transactions in . . . required § 16(a) reports[.]" <u>Whittaker</u>, 639 F.2d at 530.

8  Accordingly, there simply is no basis for applying <u>Whittaker</u>'s disclosure theory of tolling to

9  Mr. Dreiling's untimely complaint.

10  Since Mr. Dreiling has failed to plead facts supporting any other form of equitable

11  tolling (such as fraudulent concealment[11]), under controlling Ninth Circuit precedent he has

12  "waive[d] th[e] tolling defense" and the Amended Complaint should be dismissed as untimely.

13  <u>See</u> <u>Grimmett</u>, 75 F.3d at 514-15.

14      3.   <u>The Amended Complaint Fails Adequately To Plead Insider Status.</u>

15  Mr. Dreiling also fails to satisfy the pleading requirements with respect to the primary

16  gatekeeping issue in any § 16(b) case – insider status. As explained by the Supreme Court,

17  "The language of § 16 does not purport to impose its extraordinary liability on any 'person,'

18  'fiduciary' or not, unless he or it is a 'director,' 'officer' or 'beneficial owner of more than

19  10 per centum of any class of equity security [of the issuer.]'" <u>Blau</u>, 368 U.S. at 454 (quoting

20  § 16 of the Securities Act of 1934, as amended). Thus, before the Court may turn to any other

21

22

23  [11] It should be noted that the "disclosure" theory of tolling is really nothing more than a
simplified form of fraudulent concealment in which the "concealment" is demonstrated by the

24  failure to file required SEC disclosures. <u>See</u> <u>Whittaker</u>, 639 F.2d at 527 n.9. Outside of the
disclosure context, however, fraudulent concealment requires the plaintiff to "plead facts

25  showing that [the defendant] actively misled him, that he had neither actual nor constructive
knowledge of the facts constituting his claim for relief despite his diligence in trying to discover

26  the pertinent facts." <u>Rutledge v. Boston Woven Hose & Rubber Co.</u>, 576 F.2d 248, 249-50
(9th Cir. 1978).

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 10
Case No. C03-3740Z

50418449.03

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1   substantive issue in the case, it must determine whether TRS ever actually *was* a director,

2   officer or 10 per cent shareholder of InfoSpace.

3       Mr. Dreiling's pleading does not make the Court's job easy.  The Amended Complaint

4   merely states that TRS "was, from January 21, 2000 through May 21, 2001, a 'director' for

5   purposes of § 16(a) and (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a).  [TRS]

6   deputized David C. House to represent its interests on InfoSpace's board of directors.  For

7   purposes of liability under § 16(b), [TRS] was an InfoSpace director and statutory insider at all

8   relevant times." (Compl. ¶ 13.)

9       The only factual – as opposed to legal – allegation contained in those three sentences is

10  the bald assertion that TRS somehow deputized InfoSpace director David House to represent its

11  interests and, therefore, became an InfoSpace director itself.   As this Court has often

12  recognized, however, "conclusory allegations without more are insufficient to defeat a motion

13  to dismiss for failure to state a claim."  Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage,

14  Inc., 119 F. Supp. 2d 1121, 1122 (W.D. Wash. 2000) (internal citation omitted).

15      While Mr. Dreiling may wish to believe otherwise, one cannot simply presume that a

16  corporation is a director by deputization simply because one of its officers is a director of an

17  issuer in which the corporation has invested.  See Blau v. Lehman, 173 F. Supp. 590, 593

18  (S.D.N.Y. 1959) ("Blau I"), aff'd, 286 F.2d 786 (2d Cir. 1961), and aff'd, 368 U.S. 403 (1962);

19  Marquette Cement Mfg. Co. v. Andreas, 239 F. Supp. 962, 967 (S.D.N.Y. 1965).   This is

20  especially so here, where facts in Mr. Dreiling's possession or the public record show that TRS

21  was *not* a director by deputization.

22      If Mr. Dreiling had read the InfoSpace-Prio merger agreement disclosed on the SEC's

23  web site he would have learned that neither TRS nor any other Prio investor gained the right to

24  appoint InfoSpace directors as a result of the transaction.  (See generally, 8-K ex. 2.1, Mellem

25  Decl. Ex. E.)   He would further have learned that TRS became only a small InfoSpace

26

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 11
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

shareholder as a result of the transaction (approximately 1%[12]), and not one large enough likely to be able to appoint a director to the InfoSpace board in any other manner. Combining these publicly-disclosed facts with the adamant representation made to him by InfoSpace's attorneys that Mr. House "did not in any way represent AmEx on the Board of Directors of the Company," (Demand Response Letter, Mellem Decl. Ex. F), Mr. Dreiling should have reached the obvious conclusion – TRS was never an InfoSpace director or other insider subject to § 16(b)'s prohibitions.

Once one places Mr. Dreiling's conclusory deputization allegation in the proper context,[13] it becomes clear that he is on a fishing expedition for evidence of insider status. "[S]uch fishing expeditions are not permissible under federal discovery rules[,]" however, where a plaintiff "has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery[.]" Kaplan v. California Pub. Employees' Ret. Sys., No. C 98-1246 CRB, 1998 U.S. Dist. LEXIS 14040, at *19 (N.D. Cal. Sept. 3, 1998).

Indeed, while most allegations in a plaintiff's complaint must be taken as true and construed in the light most favorable to the nonmoving party, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice[.] Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of

---

[12] It should be recalled that Prio shareholders received 5,370,000 shares of InfoSpace stock – or roughly 4.7% of InfoSpace's equity – in the InfoSpace-Prio merger. (See 8-K, Mellem Decl. Ex. E, at 1; 2000 Proxy, Mellem Decl. Ex. C, at 2.) Mr. Dreiling is aware that, prior to the InfoSpace-Prio merger, TRS held 2,702,772 shares of Prio, Inc. preferred stock. (See Pl.'s Ex. A, at 2.) The publicly-disclosed merger agreement notes that there were 5,372,932 shares of Prio common and 16,713,665 Prio preferred shares then outstanding. (See 8-K ex. 2.1, Mellem Decl. Ex. E, at 17.) Even taking into consideration the different rates at which classes of Prio preferred stock converted into InfoSpace stock, then (see id. at 9), TRS's resulting stake in InfoSpace could never have significantly exceeded 1%.

[13] The Court may take judicial notice of InfoSpace's SEC filings, as well as the Demand Response Letter, without converting this motion into a motion for summary judgment. See In re Boeing, 40 F. Supp. 2d at 1165 (Court may consider SEC filings); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (Court may consider documents referred to, but not physically attached to, a plaintiff's complaint), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 119 (9th Cir. 2002).

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 12
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1  fact, or unreasonable inferences." Sprewell, 266 F.3d at 988.  Mr. Dreiling's unadorned

2  assertion that TRS "deputized" Mr. House to serve on the InfoSpace board of directors suffers

3  from all these defects.  As such, the Court should dismiss Mr. Dreiling's Amended Complaint

4  for failure adequately to allege the bedrock element of a § 16(b) claim, insider status.

5          4.    The Amended Complaint Fails To Include Adequate Demand Allegations.

6          That TRS engaged in purchases and sales of InfoSpace stock in unidentified six-month

7  periods and also somehow became a deputized director of the company are not the only legally

8  insufficient allegations made in the Amended Complaint.  Mr. Dreiling further alleges that "By

9  letter dated September 17, 2003, plaintiff made a statutory sixty-day demand on InfoSpace."

10 (Compl. ¶ 7.)  This allegation is flatly contradicted by even the most cursory examination of the

11 attached "demand" letter, however.[14]

12         "[A]t a minimum, the demand made upon the board of directors must identify the

13 alleged wrongdoer, describe the factual basis of the wrongful acts and the harm caused to the

14 corporation, and request remedial relief." Levner v. Prince Alwaleed Bin Talal Bin Abdulaziz

15 al Saud, 903 F. Supp. 452, 456 (S.D.N.Y. 1994) (internal quotation omitted), aff'd, 61 F.3d 8

16 (2d Cir. 1995).  Here, the purported demand neither identified TRS as the alleged wrongdoer

17 nor requested remedial relief from it.[15]  Absent these key attributes, Mr. Dreiling's letter was

18 not a "statutory demand" at all, despite his assertion to the contrary.  Accordingly, Mr. Dreiling

19 failed to satisfy the one statutory condition precedent to initiating a § 16(b) suit – proving once

20 again that his case should be dismissed. See Feasby, 2000 U.S. Dist. LEXIS 9792, at *20;

21

22

23 [14] The Court may, of course, freely consider this document on a motion to dismiss.  See Sprewell, 266 F.3d at 988-89; In re Boeing, 40 F. Supp. 2d at 1165.

24 [15] Instead, the Demand Letter asserts that the "*American Express Company*" made certain purchases and sales of InfoSpace stock and requests that the InfoSpace board seek from

25 *American Express* any profits made therefrom. (See Pl's Ex. 1, at 1-2. (Emphasis added.).)  Mr. Dreiling recognizes the difference between American Express and TRS, however.  Otherwise he

26 would not have amended his complaint to name TRS as the defendant in American Express's place.

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 13
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1    Kennedy, 503 F. Supp. at 1119 (both dismissing § 16(b) claims for failure to make proper

2    demand).

3    **B.    Rule 16b-3(D) Exempts TRS From Potential § 16(b) Liability.**

4            Even if the Court were to overlook every one of the Amended Complaint's many

5    procedural defects and pleading failures, it still would be compelled to grant TRS's motion to

6    dismiss for the fundamental reason that SEC Rule 16b-3(d) explicitly exempts from potential

7    § 16(b) liability any acquisition TRS may have made of InfoSpace stock.[16]  This exemption is

8    dispositive of the case since § 16(b) is inapplicable unless *both* the alleged purchase and short-

9    swing sale fall within the statute's purview.  See Foremost-McKesson, Inc. v. Provident Sec.

10   Co., 423 U.S. 232 (1976) (one must have been subject to § 16(b)'s prohibitions at both the time

11   of purchase and the time of sale to be required to disgorge short-swing profits).

12           SEC Rule 16b-3(d) provides that "*Any* [issuer-to-insider] transaction involving a grant,

13   award or *other acquisition*" of issuer equity securities shall be exempt from § 16(b) liability if

14   the transaction is "approved by the board of directors of the issuer."  17 C.F.R. § 240.16b-

15   3(d)(1) (emphases added).  Congress explicitly authorized the SEC to create this exemption

16   when it passed the Securities Exchange Act in 1934.  See 15 U.S.C. § 78p(b) (§ 16(b) "shall not

17   be construed to cover . . . any transaction or transactions which the Commission by rules and

18   regulations may exempt as not comprehended within the purpose of this subsection").

19           Current Rule 16b-3(d) was enacted in 1996, and replaced an earlier regulation that had

20   placed outside § 16(b)'s reach certain stock acquisitions occurring pursuant to an "option,

21   bonus, appreciation, profit sharing, retirement, incentive, thrift, savings or similar plan[.]"  See

22   17 C.F.R. § 240.16b-3 (1995).  Importantly, the contemporary rule applies to *all* issuer-to-

23   insider transactions.  As the SEC explained in its adopting release, "New rule 16b-3 exempts

---

24   [16]  The Court may consider SEC regulatory exemptions on a motion to dismiss.  See Gryl v.
25   Shire Pharms. Group, PLC, 298 F.3d 136, 140 (2d Cir. 2002) (applying Rule 16b-3(d)
     exemption on motion to dismiss), cert. denied, 537 U.S. 1191 (2003); Atlantic Tele-Network v.
26   Prosser, 151 F. Supp. 2d 633 (D. V.I. 2000) (applying Rule 16b-3(e) exemption on motion to
     dismiss).

DEFENDANT'S MOTION TO DISMISS THE AMENDED                    **FOSTER PEPPER & SHEFELMAN PLLC**
COMPLAINT AND MEMORANDUM IN SUPPORT - 14                     1111 THIRD AVENUE, SUITE 3400
Case No. C03-3740Z                                          SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1    from short-swing profit recovery *any* acquisitions and dispositions of issuer equity securities . . .

2    between an officer or director and the issuer, subject to simplified conditions . . . . [U]nlike the

3    [then-]current rule, a transaction need not be pursuant to an employee benefit plan or any

4    compensatory program to be exempt, or need it specifically have a compensatory element."

5    Exchange Act Release No. 34-37260, 61 Fed. Reg. 30376, at 30378-79 (June 14, 1996)

6    (emphasis added).

7        Even if the Court were to credit Mr. Dreiling's conclusory allegation that TRS was an

8    "insider" of InfoSpace, then, TRS would be protected from liability by the plain terms of the

9    SEC regulation.   TRS satisfied the two relevant requirements of the rule by (1) acquiring its

10    InfoSpace stock directly from InfoSpace in the InfoSpace-Prio merger and (2) having the stock-

11    conversion aspects the merger approved by the InfoSpace board of directors. (See Pl's Ex. A, at

12    2; 8-K ex. 2.1, Mellem Decl. Ex. E, at 1, 6.)   As the SEC itself has explained, "the only

13    limitations on the exemption for transactions between the issuer and its officer[s] or director[s]

14    are those objective conditions set forth in the  . . . subsections of the rule[.]"  (Memorandum of

15    the Securities and Exchange Commission, *Amicus Curiae*, in Support of Appellees' Petition for

16    Rehearing or Rehearing *En Banc*, Levy v. Sterling Holding Co., LLC, No. 02-1698

17    (3d Cir. 2003) ("*Amicus* Brief"), Mellem Decl. Ex. G, at *5.)

18        Two years ago the Second Circuit faced a similar situation and summarily dismissed a

19    complaint that had also challenged an alleged insider's disposition of stock acquired directly

20    from the stock's issuer. See Gryl, 298 F.3d 136.  The court explained that "the rule focuses

21    singularly and objectively on requiring that the terms and conditions of the [acquisition]

22    transaction receive board approval; it mentions nothing about the subjective motivations of the

23    approving body." Id. at 145.

24        The Second Circuit's opinion was amply supported by the legislative and regulatory

25    history.  As explained by the Supreme Court:

26

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 15
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

The general purpose of Congress in enacting § 16(b) is well known. Congress recognized that insiders may have access to information about their corporations not available to the rest of the investing public. By trading on this information, these persons could reap profits at the expense of less well-informed investors. In § 16(b) Congress sought to 'curb the evils of insider trading [by] . . . taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.'

Foremost-McKesson, 423 U.S. at 243-44 (citations and footnote omitted).  When adopting current Rule 16b-3(d), the SEC noted that, "Typically, where the issuer, rather than the trading markets, is on the other side of an officer or director's transaction in the issuer's equity securities, any profit obtained is not at the expense of uninformed shareholders and other market participants of the type contemplated by the statute."  Exchange Act Release No. 37260, 61 Fed. Reg. at 30377. "Based on its experience with the Section 16 rules," the SEC continued, "transactions between the issuer and its officers and directors . . . that satisfy [the] gate-keeping conditions, are not vehicles for the speculative abuse that Section 16(b) was designed to prevent." Id. Thus, the SEC viewed the old regulation's "compensatory nexus" requirement as irrelevant and chose to exempt *all* issuer-to-insider transactions. See id. at 30378-79. As in this Court's Shurgard case, "The legislative history . . . comports with the plain meaning of the [regulation]." 119 F. Supp. 2d at 1129.

Despite the plain language of SEC Rule 16b-3(d) and its clear regulatory history, the Third Circuit recently misconstrued the expanded scope of the new rule and adhered to earlier precedent requiring "some connection to a compensation-related function" before an acquisition could conclusively be found to be outside the scope of § 16(b).  Levy v. Sterling Holding Co., LLC, 314 F.3d 106, 124 (3d Cir. 2002), cert. denied, 124 S. Ct. 389 (2003).  This erroneous ruling conflicted with the Second Circuit's holding in Gryl and drew a sharp rebuke from the SEC, which filed an *amicus* brief in support of defendants' petition for rehearing or rehearing *en banc*.  (See *Amicus* Brief, Mellem Decl. Ex. G.)  As the SEC explained, "The panel misconstrued the Commission's intent, and has frustrated the Commission's purpose, in adopting the rules." (See id., at *4.)

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 16
Case No. C03-3740Z

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1  While the Third Circuit did not have the benefit of the SEC's most recent views at the

2  time it decided Levy, this Court does.[17]  Today there can be no doubt that the SEC intended for

3  Rule 16b-3(d) to mean what it says:  that "any 'transaction between the issuer . . . and an officer

4  or director of the issuer that involves equity securities shall be exempt from section 16(b) of the

5  Act if the transaction satisfies the applicable conditions[.]'"  (*Amicus* Brief, Mellem Decl.

6  Ex. G, at *5 (quoting 17 C.F.R. § 240.16b-3).)  As this Court has recognized, an agency's

7  interpretation of its own regulation is entitled to substantial deference.  See Geraci v.

8  Homestreet Bank, 203 F. Supp. 2d 1211, 1214 (W.D. Wash. 2002), aff'd, 347 F.3d 749 (9th Cir.

9  2003).    Indeed, an agency's regulatory interpretations presented in *amicus* briefs are

10 "controlling unless 'plainly erroneous or inconsistent with the regulation.'"  Auer v. Robbins,

11 519 U.S. 452, 461 (1997) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414

12 (1945)).

13  Here, there should be no debate that the SEC's interpretation of Rule 16b-3(d) is correct.

14 Not only is its interpretation compelled by the regulation's plain terms and drafting history, but

15 it also comports with Supreme Court declarations on the underlying statute.  As noted above,

16 the Supreme Court has stated that § 16(b) was created to prevent profit-making "at the expense

17 of less well informed investors."  Foremost-McKesson, 423 U.S. at 243.  In a direct equity

18 acquisition from an issuer, the party on the other side of the transaction is the *issuer itself*.  By

19 definition, that entity cannot be less informed about the prospects of the issuer than the alleged

20 insider.  The Supreme Court has further instructed against "the imposition of § 16(b)'s liability

21 without fault that is not consistent with the premises upon which Congress enacted the section."

22 Id. at 244.    By adopting a position adhering to Supreme Court pronouncements, the SEC

23 interpreted its own Rule 16b-3(d) without error.

24

25 [17]  It should be noted that once they learned of the SEC's views, two of the Levy decision's
three signatories, including its author, Judge Morton I. Greenberg, voted to rehear the case.  The
26 court of appeals nevertheless, on a split vote, refused to grant the defendants' petition for
rehearing.  (See Court of Appeals Docket #: 02-1698, Mellem Decl. Ex. H.)

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 17
Case No. C03-3740Z

**FOSTER PEPPER & SHEFELMAN PLLC**
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

50418449.03

1    Moreover, TRS's acquisition of InfoSpace stock would be exempt from § 16(b) liability

2  *even if* the Court were to disregard the SEC's opinion and to adopt the Third Circuit's now-

3  discredited reasoning.  The Securities Exchange Act contains a "safe harbor" provision pursuant

4  to which "No provision of this chapter imposing any liability shall apply to any act done or

5  omitted in good faith in conformity with a rule, regulation, or order of the Commission . . .

6  notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or

7  determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 78w(a)(1)

8  (2003).   Since TRS acquired its InfoSpace shares – and took all other potentially relevant

9  actions – prior to the Third Circuit's opinion in <u>Levy</u>, it was entitled to rely upon the plain

10  language of SEC Rule 16b-3(d) as it then existed.  <u>See Citadel</u>, 26 F.3d at 964.  Under any

11  theory of the case, then, TRS is immune from judgment and the Amended Complaint against it

12  should be dismissed as a matter of law.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 18
Case No. C03-3740Z

50418449.03

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ◆ 206-447-4400

# IV.  CONCLUSION

For all of the foregoing reasons, TRS's Motion to Dismiss should be granted and the Amended Complaint be dismissed in its entirety with prejudice.  A proposed Order is attached.

RESPECTFULLY SUBMITTED this 5th day of February, 2004.

FOSTER PEPPER & SHEFELMAN PLLC

Tim J. Filer, WSBA No. 16285
Roger D. Mellem, WSBA No. 14917
Attorneys for Defendant American Express
Travel Related Services Company, Inc.


Of Counsel:

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP

Robert E. Zimet
Jason C. Vigna
Four Times Square
New York, NY 10036
(212) 735-3000
Admitted *pro hac vice*

DEFENDANT'S MOTION TO DISMISS THE AMENDED
COMPLAINT AND MEMORANDUM IN SUPPORT - 19
Case No. C03-3740Z

50418449.02

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400

1                                                      The Honorable Thomas S. Zilly

2

3

4

5

6

7         UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
                                    AT SEATTLE
8
   THOMAS R. DREILING, a shareholder of
9  INFOSPACE, INC.,
                                                   No. C03-3740Z
10                   Plaintiff,
                                                   ORDER GRANTING DEFENDANT
11          v.                                     AMERICAN EXPRESS TRAVEL
                                                   RELATED SERVICES COMPANY'S
12 AMERICAN EXPRESS TRAVEL RELATED                 MOTION TO DISMISS THE
   SERVICES COMPANY, INC., a New York              AMENDED COMPLAINT
13 Corporation,                                    [PROPOSED]

14                   Defendant,

15                 .    And

16 InfoSpace, Inc., a Delaware corporation,

17                   Nominal Defendant.

18

19         THIS MATTER has come before the Court on Defendant American Express Travel

20 Related Services Company, Inc.'s Motion To Dismiss the Amended Complaint, and the Court

21 has considered the following pleadings:

22         1.      Defendant American Express Travel Related Services Company, Inc.'s Motion

23 To Dismiss the Amended Complaint and Memorandum in Support;

24         2.      Declaration of Roger D. Mellem in Support of Defendant American Express

25 Travel Related Services Company, Inc.'s Motion To Dismiss the Amended Complaint.

26

ORDER GRANTING DEFENDANT AMERICAN
EXPRESS TRAVEL RELATED SERVICES                      **FOSTER PEPPER & SHEFELMAN PLLC**
COMPANY'S MOTION TO DISMISS THE                         1111 THIRD AVENUE, SUITE 3400
                                                 SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400
AMENDED COMPLAINT [PROPOSED] - 1
Case No. C03-3740Z
50418393.01

1    3.    Plaintiff's opposition pleadings, Defendant's Reply Brief, and the pleadings and

2    files herein.

3    NOW, THEREFORE, IT IS HEREBY ORDERED that:

4    Defendant American Express Travel Related Services Company, Inc.'s Motion To

5    Dismiss the Amended Complaint is GRANTED.  The Amended Complaint is DISMISSED in

6    its entirety with prejudice.

7    SO ORDERED this _____ day of _____, 2004.

8

9

10   _____

11   HON. THOMAS S. ZILLY
     United States District Court Judge

12   Presented by:

13   FOSTER PEPPER & SHEFELMAN PLLC

14

15   _____

16   Tim J. Filer, WSBA No. 16285
     Roger D. Mellem, WSBA No. 14917
     Attorneys for Defendant American Express

17   Travel Services Company, Inc.

18   Of Counsel:

19   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

20   Robert E. Zimet
     Jason C. Vigna

21   Four Times Square
     New York, NY 10036

22   (212) 735-3000
     Admitted *pro hac vice*

23

24

25

26

ORDER GRANTING DEFENDANT AMERICAN
EXPRESS TRAVEL RELATED SERVICES
COMPANY'S MOTION TO DISMISS THE
AMENDED COMPLAINT [PROPOSED] - 2
Case No. C03-3740Z

50418393.01

FOSTER PEPPER & SHEFELMAN PLLC
1111 THIRD AVENUE, SUITE 3400
SEATTLE, WASHINGTON 98101-3299 ♦ 206-447-4400